

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 05-95138 |
| Hernan Toro-Arcila, | § | |
| Debtor. | § | |

## MEMORANDUM OPINION AND ORDER

The Court deals with an issue of first impression: whether § 362(c)(4)(B) authorizes the Court to reimpose the automatic stay in a case where:

1. The debtor has had one previous case pending in the previous year;

2. The debtor filed a motion seeking to reimpose the stay within 30 days of filing his latest bankruptcy petition; and

3. The Court did not rule on the motion before the expiration of 30 days from the filing of the latest petition.

### Background

Mr. Toro-Arcila filed the present case on November 8, 2005. His original chapter 13 petition stated that he had not been in a prior bankruptcy case for 8 years and had no pending bankruptcy case. However, on November 23, 2005, Mr. Toro-Arcila filed an amended petition that disclosed that Mr. Toro-Arcila had been a debtor in a bankruptcy case in the Western District of North Carolina in a case filed on August 29, 2002.

On December 8, 2005, Mr. Toro-Arcila filed a motion to impose the automatic stay. In that motion, Mr. Toro-Arcila requested that the Court extend the automatic stay pursuant to 11 U.S.C. § 362(c)(3) or 11 U.S.C. § 362(c)(4). The factual recitations in the motion show that the North Carolina bankruptcy case was dismissed on October 17, 2005. A copy of the North Carolina dismissal order was attached to the motion.

1

### Stay Terminated Under § 362(c)(3)

On October 17, 2005, most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. The Act dramatically modifies the automatic stay provisions under § 362 of the Bankruptcy Code. One significant change affects an individual who has been a debtor in a previous bankruptcy case "pending within the preceding 1-year period...." 11 U.S.C. § 362(c)(3). Section 362(c)(3)(A) provides that the automatic stay shall terminate on the 30th day after the filing of a case if the debtor has had a case pending within the preceding one-year period.

Notwithstanding § 362(c)(3)(A), the automatic stay may be continued under the circumstances set forth in § 362(c)(3)(B). *In re Collins,* 2005 WL 3163962 (Bankr. D.Minn. 2005); *In re Montoya,* 2005 WL 3160532 (Bankr. D.Utah 2005); *In re Charles (Charles I),* 332 B.R. 538, (Bankr. S.D.Tex. 2005).

Relief under § 362(c)(3)(B) may only be granted "after notice and a hearing completed before the expiration of the 30-day period." This motion was filed at 8:33 p.m. on the 30th day after the case was filed. For obvious reasons, the Court was not presented with the motion until after the expiration of 30-days from the date of the filing of the petition. Accordingly, there was no opportunity for notice and hearing before the expiration of the 30th day. In accordance with the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act, the automatic stay terminated by operation of law under § 362(c)(3)(A) and no relief can be granted under § 362(c)(3)(B).

### Reimposition of Stay Under § 362(c)(4)

The Debtor also seeks relief pursuant to § 362(c)(4). This section has several material differences from § 362(c)(3). Although under § 362(c)(3)(A) there is a 30-day automatic stay for

first-time repeat filers,[1] § 362(c)(4)(A) imposes no automatic stay at all for multiple repeat filers. Instead, § 362(c)(4)(B) provides that the court may order the stay take effect after notice and a hearing if a party in interest requests such relief within 30 days after the case is filed. Under § 362(c)(4)(B), only the motion to impose the stay must be filed within 30 days of the petition; no order must be entered within that time.

Moreover, at first blush, § 362(c)(4) appears to apply only to multiple repeat filers and not to first-time repeat filers. Subsection (A) reads as follows:

> (A)
>
> (i) if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case; and
>
> (ii) on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect;

By its terms, § 362(c)(4)(A) applies only to multiple repeat filers.

Sections 362(c)(4)(B), (C) and (D) set forth the substantive law with respect to hearings on whether to impose a stay. Sections 362(c)(4)(C) and (D) refer to the § 362(c)(4)(B) hearing and establish substantive law as to the hearing that is contemplated by § 362(c)(4)(B).

The issue is whether the hearing contemplated by § 362(c)(4)(B) can only occur for a multiple repeat filer or whether the hearing can also occur for a first-time repeat filer. If the § 362(c)(4)(B) hearing applies only to § 362(c)(4)(A) cases—i.e. multiple repeat filers—then the bulk of section § 362(c)(4)(D) would be rendered meaningless. Conversely, if § 362(c)(4)(B)

---

[1] For convenience, the Court will refer to persons who have been in one previous case within one year of the most recent petition as "first-time repeat filers," and to those who have been in more than one previous case within one year of the most recent petition as "multiple repeat filers."

3

also applies in a single-repeat filer case, then the reference to "the later case" cannot refer only to a later case of the type described in § 362(c)(4)(A), which is the apparent reference at first blush.

Section 362(c)(4)(D) creates a presumption that certain cases are not filed in good faith:

> (D) for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—
>
> > (i) as to all creditors if—
> >
> > > (I) 2 or more previous cases under this title in which the individual was a debtor were pending within the 1-year period;
> > >
> > > (II) a previous case under this title in which the individual was a debtor was dismissed within the time period stated in this paragraph after the debtor failed to file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney), failed to provide adequate protection as ordered by the court, or failed to perform the terms of a plan confirmed by the court; or
> > >
> > > (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under this title, or any other reason to conclude that the later case will not be concluded, if a case under chapter 7, with a discharge, and if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; or
> >
> > (ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, such action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to such action of such creditor.

11 U.S.C. § 362(c)(4)(D).

The problem with the "first blush" interpretation is that it renders virtually all of § 362(c)(4)(D) to be meaningless surplusage. Section 362(c)(4)(D)(i)(I) applies to *all* creditors in *all* cases governed by § 362(c)(4)(A). If the "later case" referred to in § 362(c)(4)(B) must be a later case of a type described in § 362(c)(4)(A), then there will be no instances in which the language in §§ 362(c)(4)(D)(i)(II), (D)(i)(III), or (D)(ii) would ever be considered. Such an interpretation violates a basic tenet of statutory interpretation. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

The Court recognizes that "[s]urplusage does not always produce ambiguity and our preference for avoiding surplusage constructions is not absolute." *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004). However, in *Lamie*, the Court was concerned that a single word—perhaps inadvertently included in the statute—would produce surplusage. In this case, the surplusage would constitute an entire section comprised of 278 words and multiple paragraphs. The Court is unable to locate any authority for such a wholesale disregard of the normal method of statutory construction.[2]

---

[2] Coincidentally, Lincoln's address at Gettysburg was also 278 words in length:

> *Four score and seven years ago our fathers brought forth on this continent, a new nation, conceived in Liberty, and dedicated to the proposition that all men are created equal. Now we are engaged in a great civil war, testing whether that nation, or any nation so conceived and so dedicated, can long endure. We are met on a great battle-field of that war. We have come to dedicate a portion of that field, as a final resting place for those who here gave their lives that that nation might live. It is altogether fitting and proper that we should do this. But, in a larger sense, we can not dedicate -- we can not consecrate -- we can not hallow -- this ground. The brave men, living and dead, who struggled here, have consecrated it, far above our poor power to add or detract. The world will little note, nor long remember what we say here, but it can never forget what they did here. It is for us the living, rather, to be dedicated here to the unfinished work which they who fought here have thus far so nobly advanced. It is rather for us to be here dedicated to the great task remaining before us -- that from these honored dead we take increased devotion to that cause for which they gave the last full measure of devotion -- that we here highly resolve that these dead shall not have died in vain -- that this nation, under God,*

In reviewing a statute to determine whether words should be treated as surplusage, *Lamie* also directs the Court to determine if the words would render the meaning of the statute repugnant to the intent of the drafters. In this case, there is no repugnance. Giving meaning to subsection (D) would merely give a first-time repeat filer the same hearing rights as a multiple repeat filer.

Although this reading creates other interpretive problems (as set forth below), the Court concludes that it must read § 362(c)(4)(D) along with §§ 362(c)(4)(B) and (C) to provide meaning to the statute as a whole and to implement Congressional intent. Subsections (B) and (C) provide as follows:

> (B) if, within 30 days after the filing of the later case, a party in interest requests the court may order the stay to take effect in the case as to any or all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing, only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed;
>
> (C) a stay imposed under subparagraph (B) shall be effective on the date of the entry of the order allowing the stay to go into effect.

As set forth above, subsection (D) provides a rebuttable presumption that certain cases have not been filed in good faith. Read together with subsections (B) and (C), the Court concludes that Congress intended for subsection (B) to apply to cases in which there is a timely request that the stay be imposed, whether the case is the first repeat filing or a subsequent repeat filing. This interpretation gives meaning to subsection (D) and provides a more consistent application of §§ 362(c)(3) and (4). The alternative interpretation would result in the following results:

---

> *shall have a new birth of freedom -- and that government of the people, by the people, for the people, shall not perish from the earth.*

Although the meaning of this subsection cannot be compared to the importance of the Gettysburg Address, the Court presumes that Congress did not codify words of comparable length with no meaning whatsoever.

1. Sections 362(c)(4)(D)(i) and (ii) would be meaningless.

2. A debtor (such as Mr. Toro-Arcila) who waited until the 30th day to seek an extension of the automatic stay would not be able to obtain the extension in a second filed case, but would be able to dismiss the second filed case and get a hearing in a third filed case. Put simply, if the Court denies Mr. Toro-Arcila a hearing, he has the right to dismiss this case (see § 1307(b)). If he dismissed this case and refiled, he would not obtain an automatic stay, but would obtain the right to a hearing under § 362(c)(4) that might allow for a court-imposed stay. Congress could not have meant to create such gamesmanship.

Of course, the Court recognizes that the interpretation set forth in this opinion is not without its own problems. This interpretation makes the phrase "the later case" in § 362(c)(4)(B) lose its apparent reference. The phrase facially appears to refer to the later case of the cases described in § 362(c)(4)(A). Moreover, it creates a statutory structure where certain provisions of § 362(c)(4) apply to §§ 362(c)(3) and (4). Neverthelsss, when Congress (within this section) intended to refer and incorporate a specific prior subparagraph, it did so. Section 362(c)(4)(C) explicitly refers to § 362(c)(4)(B) ("a stay imposed under subparagraph (B)"); the same is true of § 362(c)(4)(D) ("for purposes of subparagraph (B)"). There is no such reference to subparagraph (A) within the text of subparagraph (B). The usual rule is that "when the legislature uses certain language in one part of the statue and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9 (2004) (quoting 2A N. Singer, STATUTES AND STATUTORY CONSTRUCTION § 46:06, p.194 (6th ed. 2000)). After full consideration, the Court concludes that the "first blush" interpretation is incorrect. The Court will give meaning to the entirety of the statute and will not incorporate an exclusive reference to subparagraph (A) that Congress did not choose to insert.

Accordingly, the Court concludes that the Debtor may obtain a hearing on his motion. Of course, pending consideration by the Court, there is no stay.

### Hearing Requirements, Repleading and Setting

This Court has set forth the requirements for obtaining a stay extension under § 362(c)(3). *In re Charles* (*Charles II*), 2005 WL 3288182 (Bankr. S.D. Tex. Nov. 30, 2005). There are no published opinions setting forth the requirements for relief under § 362(c)(4)(B). Mr. Toro-Arcila should set forth the basis on which he is entitled to relief in accordance with *Charles II* or file a brief setting forth alternative legal standards for consideration of the motion.

It appears that Mr. Toro-Arcila only seeks to extend the stay as to the creditor holding a security interest in his automobile. If additional relief is sought, it must be pled in a manner that gives creditors adequate notice. *See In re Charles* (*Charles I*), 332 B.R. 538 (Bankr. S.D. Tex. 2005). Mr. Toro-Arcila is given leave to replead his motion in accordance with *Charles I* if he seeks relief as to other creditors. (Doc. #32)

The Court will conduct an evidentiary hearing on December 30, 2005 at 10:30 a.m. Mr. Toro-Arcila must provide notice to the chapter 13 trustee and to all affected creditors.

Signed at Houston, Texas, on December 12, 2005.

MARVIN ISGUR
United States Bankruptcy Judge